Brian J. Miller
MORRISON SHERWOOD WILSON & DEOLA, PLLP
401 North Last Chance Gulch
P.O. Box 557
Helena, MT 59624-0557
406-442-3261 Phone
406-443-7294 Fax
bmiller@mswdlaw.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, GREAT FALLS DIVISION

| | |
|---|---|
| TRA BOGGS, on behalf of himself and his minor children C.D.B. and T.J.B., DEWAYNE JOHNSON, and ROBERTA CORBY,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CUT BANK, by and through Cut Bank Police Department,<br><br>Defendant. | Case No. CV-23-34-GF-BMM<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

1. Plaintiff Tra Boggs is an enrolled member of the Blackfeet Indian Nation and lives in Cut Bank, Montana.

2. The City of Cut Bank, Montana, is a municipal entity organized under the laws of the State of Montana.

3. Mr. Boggs is the natural father of two children, C.D.B. (aged 7), and T.J.B. (aged 4).

4. The natural mother of C.D.B. and T.J.B., was a woman named Chelsea Rosenberger. Ms. Rosenberger died in a car accident on December 13, 2021.

5. Roberta Corby is the grandmother of C.D.B. and T.J.B. and resides in Cut Bank, Montana.

6. Dewayne Johnson is the husband of Roberta Corby and resides in Cut Bank, Montana.

7. This Court has jurisdiction over this case pursuant 28 U.S.C. §§ 1331 and 1983, and 25 U.S.C. §§ 1302 and 1303.

8. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b), and in this division pursuant to Local Rules 1.2(c) and 3.2(b).

9. Mr. Boggs has had custody of his children for their entire life. Their biological mother, Chelsea Rosenberger, exercised visitation with them as well when she was living.

10. In 2020, the children were living at Ms. Corby's residence in Cut Bank, 520 2nd St., SW. Mr. Boggs resided there as well, along with his step-grandfather Dewayne Johnson who is also a dialysis patient.

11. Rebecca Rosenberger is the grandmother of Chelsea Rosenberger and lives on the Blackfeet Reservation in Browning, Montana.

12. Lori Monroe Rosenberger is the aunt of Chelsea Rosenberger and lives on the Blackfeet Reservation in Browning, Montana.

13. In November of 2020, Rebecca and Lori called Mrs. Corby and asked if they could spend time with C.D.B. and T.J.B. at their residence in Browning. Mrs. Corby asked the boys if they wanted to go visit their aunts in Browning, Montana, and they expressed an interest to do so.

14. Rebecca and Lori had almost no involvement in the children's life prior to this point in time.

15. The children went to visit Rebecca and Lori on December 24, 2020, and spent the weekend with them. After the children returned, they both told Mr. Boggs that they did not want to go and visit Lori and Rebecca because their children kept fighting with them.

16. On January 11, 2021, Rebecca and Lori filed a Petition for Custody of C.D.B. and T.J.B. in Blackfeet Family Court. In the Petition, Rebecca and Lori made a series of untrue and baseless allegations against Mr. Boggs about violent behavior, drug possession, and the like. Rebecca and Lori requested full custody of the children.

Complaint and Demand for Jury Trial

17. Ultimately, on April 6, 2021, the Blackfeet Family Court, Judge Connelly presiding, granted full custody of C.D.B. and T.J.B. to Lori and Rebecca. Judge Connelly held that Mr. Boggs and Mrs. Corby could only have "supervised visitation" with their children, subject to the discretion of Lori. Judge Connelly held that the children were not to leave the reservation for their visitation. The order also provided other miscellaneous relief, including requiring Mr. Boggs to submit to random drug tests for 6 months, and restraining Mr. Boggs from having any contact with Lori or Rebecca. The order also decreed that "local law enforcement shall assist Petitioners in obtaining children from Tra Boggs, Quintin Boggs, or Robin Corby".

18. At the time of the hearing, there were no issues whatsoever with the children's safety and well-being in Mr. Boggs' care. There were no investigations pending or initiated into his parenting abilities by Child Protective Services, nor were there any allegations of abuse, neglect, or any other issue, alleged or pending before any state or tribal agency.

19. The Blackfeet Tribal Court Order contains no evidence of findings that Mr. Boggs is an unfit parent.

20. On the evening of April 7, 2021, Lori and her husband Justin Monroe, with the assistance of the Cut Bank Police, took C.D.B. and T.J.B. from the home of Mr. Boggs and Mrs. Corby. The time was after 5 pm. Officers from the

Cut Bank police came to Mrs. Corby's home and forced their way into her home without a warrant or probable cause to do so. Mrs. Corby and Dewayne Johnson were home at the time, and Mr. Boggs was in St. Mary's.

21. Mr. Johnson and Mrs. Corby attempted to stop the Cut Bank Police from entering their home but were threatened with the filing of charges against them if they did not allow the police to enter.  The Cut Bank police made a forcible entry into the home, without permission or legal justification to do so, and assisted Lori and Justin Monroe with unlawfully taking C.D.B. and T.J.B. from their home in Cut Bank and removing them to the Blackfeet Indian Nation to reside with Lori and Rebecca.

22. The incident caused emotional distress and fear for Mrs. Corby and Mr. Johnson, as well as C.D.B. and T.J.B.

23. Over the next 10 months, Mr. Boggs barely saw his children at all and they were deprived of the care, custody, and comfort of their father, grandmother, and step-grandfather.  During this time, their mother passed away and they were unable to attend their funeral.

24. During this time, Mr. Boggs had to devote substantial time and resources to attempting to get his children back from the Blackfeet Tribe, but he was unable to do so.

25. Furthermore, the children C.D.B. and T.J.B. suffered emotional distress while in the care of Lori and Rebecca, two persons who were virtually strangers to the children and subjected them to emotional abuse and neglect.

26. Mr. Boggs, his mother, and his stepfather, all suffered emotional distress during this time as a result of being deprived of the custody and care of C.D.B. and T.J.B.  For Mr. Boggs and Ms. Corby the distress was serious and severe.

27. It was reasonably foreseeable to the City of Cut Bank that its conduct, taken in violation of the Fourth Amendment, would cause C.D.B., T.J.B., Mr. Boggs, Ms. Corby, and Mr. Johnson to suffer the emotional distress as they did in this case.  Depriving children of the care and custody of their biological parent, in the absence of any findings or evidence that the parent is unfit to care for the child, is reasonably foreseeable to cause the harm and damage that was caused in this case.

28. Furthermore, the City of Cut Bank should have known that taking Mr. Boggs' children, based on an Order from the Blackfeet Court without any basis for jurisdiction off the boundaries of the Blackfeet Reservation, and then allowing them to be placed in the Blackfeet Reservation, would result in a violation of Mr. Boggs' fundamental right to parent under the U.S. Constitution.

29. On February 19, 2022, Mr. Boggs was finally able to have custody off the reservation for the first time in months. From the time that the Cut Bank Police took Mr. Boggs children until this date, he had been caught in a legal nightmare inside the Blackfeet Tribal Court system which lacks the most basic elements of due process and fairness.

30. When Mr. Boggs obtained visitation of his children off the Blackfeet Reservation on February 19, 2022, he had no choice but to take all actions necessary to ensure that his children were not returned to the Blackfeet Reservation because had they been, he would have had little to no hope of seeing them for perhaps years, given the utter lack of due process that prevailed in the Blackfeet Tribal Court system and its hostile attitude towards him.

31. Thus, Mr. Boggs was forced to take his children and initiate federal litigation against the Blackfeet Nation and other parties to protect his children from being returned to the Blackfeet Reservation and suffering more abuse and neglect.

32. In response, the Blackfeet Tribal Police put out a "Missing/Endangered Person Advisory" notice for Mr. Boggs on the statewide media, falsely portraying him as a criminal, stating there was concern for the safety and

well-being of Mr. Boggs' children, which was completely and utterly false. This caused him to suffer severe and serious emotional distress.

33. However, Mr. Boggs had absolutely no choice but to take this action, as all other state and federal courts would have declined any jurisdiction over his case; thus, if he had turned his children back over to the Blackfeet Tribal Court, he would likely still not be able to see them to this day.

34. This entire course of events was reasonably foreseeable, and proximately caused by, the City of Cut Bank's violation of Mr. Boggs' Fourth Amendment rights. It was reasonably foreseeable, under the circumstances presented to the City of Cut Bank on April 7, 2021, that such a result as did occur would occur.

35. Indeed, the entire chain of events that occurred once the City of Cut Bank allowed the Blackfeet Tribal Court, and Monroe and Rosenberger, to obtain custody of the children, was a normal consequence of the City of Cut Bank's decision to violate Mr. Boggs' Fourth Amendment rights.  It was not extraordinary or abnormal that what ended up happening to Mr. Boggs, and the events that he subsequently suffered, would indeed occur, and the City of Cut Bank knew, or should have known, this at the time it violated Mr. Boggs' Fourth Amendment rights.

36. As a result of the actions of the Cut Bank Police in engaging in the extrajudicial enforcement of an order without any lawful basis, Mr. Boggs was deprived of the custody of his children from April 7, 2021, until February 19, 2022. Mr. Boggs has suffered severe and serious emotional distress as a result of his inability to see his children.

37. C.D.B. and T.J.B. have suffered emotional distress as a result of the deprivation of their rights to the custody and care of their natural parent, Mr. Boggs. They were also traumatized and subject to abuse and neglect at the hand of Rosenberger and Monroe, which was proximately caused by the violations of the City of Cut Bank.

38. Mr. Johnson and Mrs. Corby suffered emotional distress damages by the City of Cut Bank's Fourth Amendment violation of their rights by entry into their home, and the threat of prosecution against them if they resisted the City of Cut Bank's unconstitutional conduct.

39. The City of Cut Bank, knew, or should have known, that the Blackfeet Tribal Court Order was completely unenforceable and without any legal force or merit outside of the bounds of the Blackfeet Reservation.

40. Furthermore, the City of Cut Bank knew, or should have known, that the Blackfeet Tribal Court Order was a foreign judgment which could not be

enforced unless it was properly recognized as a foreign judgment, enforceable in the State of Montana.

41. As a matter of law, the Blackfeet Tribal Court Order was not enforceable in Montana, as found by Judge Olsen in his ruling denying the enforcement of the foreign judgment on September 23, 2022, in *Monroe v. Boggs*, DR-22-014 (Glacier County, State of Montana).

42. The City of Cut Bank had no legal basis of justification for entering the Plaintiff's home, and had they not entered the home to seize Mr. Boggs' children, no damages by him or his children would have been suffered.

43. Similarly, the unlawful entry of the City of Cut Bank in actively assisting Monroe and Rosenberger in obtaining control over Mr. Boggs' children was intricately tied to the damage and loss suffered (deprivation of his children, and the children's deprivation of custody with Mr. Boggs).

44. Similarly, the City of Cut Bank had no information that the children were subject to abuse or neglect, no reason to believe that any exigent circumstances of any nature existed. The City of Cut Bank knew, or should have known, that handing over Mr. Boggs' children to these strangers, without any legal process or notice to him, was likely to cause him damage and force him into the byzantine maze of Blackfeet Tribal Court, a system which lacks due process and regard for individual rights.

45. Moreover, had the City of Cut Bank adhered to constitutionally required warrant procedures—which they should have done given the lack of any exigent circumstances or other exception to the warrant requirement whatsoever—it would have been immediately apparent that at an order from Glacier County District Court was required to enforce the Blackfeet Tribal Court order and that no such order could be obtained.

**Count I- Violation of 42 U.S.C. § 1983-Fourth Amendment Violation**

46. The foregoing paragraphs are realleged as though set forth in full.
47. "To sustain an action under § 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699-700 (9th Cir. 1988).
48. The Fourth Amendment protects against unreasonable searches and seizures and prohibits entry to a person's home absent a warrant or other exceptions to the warrant requirement.
49. "The process of having to collect information, seek permission for entry from a magistrate, and justify that entry, most clearly serves important social interests where a warrant request is denied because it creates a barrier

protecting persons from unnecessary harm at the hands of police." *Mendez v. City of Los Angeles*, 897 F.3d 1067, 1080-81 (9th Cir. 2018).

50. Had the City of Cut Bank followed the mandated process of obtaining a warrant, which it was legally obliged to do, no warrant would have been granted and no entry allowed, and Monroe and Rosenberger would have been forced to obtain approval of enforcement through a Glacier County District Court which would have been denied. No damages would have been suffered by Mr. Boggs had the City of Cut Bank followed the procedures and requirements of the Fourth Amendment.

51. The City of Cut Bank was not authorized by law to enter the home of Mr. Johnson, Mrs. Corby, and Mr. Boggs on April 7, 2021. Their entry was therefore unreasonable.

52. In the course of the unlawful entry, the Cut Bank Police threatened Mr. Johnson and Mrs. Corby with arrest, further causing them emotional distress and interfering with their ability to exercise their constitutional rights.

53. Furthermore, the Fourth Amendment violation deprived Mr. Boggs of the care and custody of his children who were residing there along with him.

54. The City of Cut Bank knew, or should have known, that a warrant was required to enter the home.

Complaint and Demand for Jury Trial

55. Mr. Johnson, Mrs. Corby, Mr. Boggs, and his children are entitled to damages as a result of the constitutional violations described herein, which include emotional distress damages from the event itself, and from the loss of companionship and time with their families which would not have happened, but for the unconstitutional conduct of these defendants. Furthermore, the children suffered forms of emotional and mental abuse at the hands of Rosenberger and Monroe, which would not have occurred, but for the actions of the City of Cut Bank.

**Count II- Violation of 42 U.S.C. § 1983-Violation of Mr. Boggs' parental rights against the City of Cut Bank**

56. The foregoing paragraphs are realleged as though set forth in full.

57. "[A] parent has a constitutionally protected liberty interest in the companionship and society of his or her child," and "[t]he state's interference with that liberty interest without due process of law is remediable under section 1983." *Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir. 1985).

58. The City of Cut Bank violated Mr. Boggs liberty interest in the companionship and society of his children, when it entered Mr. Johnson's and Mrs. Corby's home without a warrant or exception to the warrant requirement, and facilitated Lori in taking Mr. Boggs' children.

59. By doing so, the City of Cut Bank deprived Mr. Boggs of the due process which would have been provided by the Glacier County District Court when it ruled upon whether the Blackfeet Tribal Court Order could be enforced as a foreign judgment.

60. However, by entering the residence without a warrant, the City of Cut Bank short-circuited all normal channels of legal process, and forced Mr. Boggs into a position where he was dealing with the Blackfeet Tribal Court which lacked even the semblance of due process.

61. Furthermore, the City of Cut Bank forced Mr. Boggs into a completely impossible position of having to take his children when he received them on February 22, 2022, and then being publicly portrayed as a criminal in statewide media by the Blackfeet Tribal Police.

62. The City of Cut Bank is liable to Mr. Boggs for emotional distress and other damages caused by their conduct in depriving them of their reciprocal care and companionship, and the ordeal that this Fourth Amendment violation caused, which was reasonably foreseeable and proximately caused by the violation.

**COUNT III-NEGLIGENCE**

63. The foregoing paragraphs are realleged as though set forth in full.

64. The City of Cut Bank owed Mr. Boggs a duty to use reasonable care in the enforcement of any orders of custody that were not issued by a lawful order of a Montana State District Court judge.

65. The City of Cut Bank breached that duty of reasonable care by enforcing a foreign judgment without ensuring that it was properly reviewed and approved by a Montana State District Court Judge according to Montana law.

66. The City of Cut Bank furthermore engaged in affirmative conduct which injured Mr. Boggs and his children, by enforcing an unlawful order against them.

67. The City of Cut Bank is liable to the injuries caused by this breach of duty, including all of those injuries listed herein which where proximately caused by the breach.

WHEREFORE, Plaintiff prays for the following relief:

1. A jury trial on all issues so triable;
2. Compensatory damages as allowed by law;
3. Attorney fees and costs as allowed by law; and
4. Any other relief this Court deems necessary and just.

Dated this 26th day of June, 2023

/s/ Brian J. Miller

Brian J. Miller
Morrison, Sherwood, Wilson, and Deola, PLLP
*Attorneys for Plaintiffs*